## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## AT NASHVILLE

| | | |
|---|---|---|
| WILLIAM HAMBY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2-04-0106 |
| | ) | Judge Haynes |
| ANSEI AMERICA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

Plaintiff, William Hamby, filed this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., against Defendant, Ansei America, Inc., asserting claims of a hostile work environment, and retaliatory discharge for his complaints of sexual harassment. (Docket Entry No. 1).

Before the Court are Defendant's motion for judgment on the record (Docket Entry No. 23), Defendant's motion to continue trial and schedule mediation (Docket Entry No. 36), and Defendant's motion for summary judgment. (Docket Entry No. 21).

Defendant's motion for summary judgment contends that, in sum: (1) that Plaintiff cannot establish a prima facie case of hostile environment harassment; (2) that even if Plaintiff could meet the standard for establishing sexual harassment, Plaintiff's claim fails because Defendant exercised reasonable care to prevent and promptly correct any sexually harassing behavior, and the Plaintiff unreasonably failed to take advantage of any preventative or corrective opportunities provided by Defendant or to avoid harm otherwise; and (3) that Plaintiff's termination was not in retaliation for complaining of sexual harassment. (Docket Entry No. 21).

In his response, Plaintiff states that he has established a prima facie case of both hostile

work environment and retaliation. (Docket Entry No. 31). In its reply, Defendant states, (1)

Plaintiff has admitted each material fact set forth in Defendant's Local Rule 8(b)(7)(b) statement

(Docket Entry No. 22 and 29) and, therefore, there are no disputed issues of material fact and

judgment as a matter of law is appropriate; (2) Plaintiff has ignored evidence precluding Plaintiff

from establishing that the allegedly harassing conduct was unwelcome and failed to establish

that the conduct was sufficiently severe or pervasive to constitute unlawful harassment; and (3)

Plaintiff has neither stated a prima facie case nor addressed Defendant's stated, non-

discriminatory reason for his termination. (Docket Entry No. 32).

## A. Findings of Fact[1]

The Plaintiff does not dispute the Defendant's statement of undisputed material facts.

(Docket Entry No. 22 and 29). Therefore, the Court adopts the Defendant's statement of

material facts (Docket Entry 22) and Plaintiff's responses (Docket Entry No. 29) as the facts of

this action, and incorporates them by reference. Pertinent facts are also discussed in the analysis

of Plaintiff's claims.

## B. Conclusions of Law

"The very reason of the summary judgment procedure is to pierce the pleadings and to

---

[1]Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986) app. 840 F.2d 16 (6th Cir. 1988) (unpublished opinion). As will be discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52, 106 S.Ct. 2502, 91 L.Ed.2d 202 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265, 276 (1986). Based upon the Plaintiff's responses to Defendant's statement of undisputed facts, the Court finds that there are not any material facts in dispute.

2

assess the proof in order to see whether there is a genuine need for trial." Advisory Committee

Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover,

"district courts are widely acknowledged to possess the power to enter summary judgment <u>sua</u>

<u>sponte</u>, so long as the opposing party was on notice that she had to come forward with all of her

evidence." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 326 (1986). <u>Accord</u>, <u>Routman v. Automatic</u>

<u>Data Processing, Inc.</u>, 873 F.2d 970, 971 (6th Cir. 1989).

In <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986), the United States Supreme

Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact. <u>As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment</u>. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court

defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not

lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"

<u>Matsushita Electrical Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986) (citations

omitted).

A motion for summary judgment is to be considered after adequate time for discovery.

<u>Celotex</u>, 477 U.S. at 326. Where there has been a reasonable opportunity for discovery, the

party opposing the motion must make an affirmative showing of the need for additional

discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989). But see Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the Court in Celotex:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991) (quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of `demonstrating the absence of a genuine issue of material fact,' the nonmoving party then `must set forth specific facts showing that there is a genuine issue for trial.'" Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989) (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "[t]he respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must `present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting Liberty Lobby). Moreover, the Court of Appeals explained that:

> The respondent must `do more than simply show that there is some metaphysical

4

doubt as to the material facts.' Further, `[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is `implausible.'

Street, 886 F.2d at 1480 (citations omitted). See also Hutt v. Gibson Fiber Glass Products, No. 89-5731 (6th Cir. filed September 19, 1990) ("A court deciding a motion for summary judgment must determine `whether the evidence presents a sufficient disagreement to require a submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." quoting Liberty Lobby)).

If both parties make their respective showings, the Court then determines if

the material factual dispute is genuine, applying the governing law.

> More important for present purposes, summary judgment will not lie if the dispute about a material fact is `genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.
>
> * * *
>
> Progressing to the specific issue in this case, we are convinced that the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- `whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'

Liberty Lobby, 477 U.S. at 252 (citation omitted and emphasis added).

It is likewise true that:

[I]n ruling on a motion for summary judgment, the court must construe the evidence

Case 2:04-cv-00106   Document 38   Filed 10/17/05   Page 5 of 15 PageID #: 308

in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: `The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Company, 791 F.2d. 43, 46 (6th Cir. 1986) app. 840 F.2d 16 (6th Cir. 1988) (unpublished opinion) (citation omitted).

The Court of Appeals further explained the District Court's role in evaluating the proof on a summary judgment motion:

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establishing a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to 'designate' facts by citing specific page numbers. Designate means simply 'to point out the location of.' Webster's Third New InterNational Dictionary (1986).
> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989) cert. denied 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990). Here, the parties have given some references to the proof upon which they rely. Local Rule 8(b)(7)(A) and (C) require a showing of undisputed and disputed facts.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

6

1.    Complex cases are not necessarily inappropriate for summary judgment.

2.    Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3.    The movant must meet the initial burden of showing 'the absence of a genuine issue of material fact' as to an essential element of the non-movant's case.

4.    This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5.    A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law.'

6.    As on federal directed verdict motions, the 'scintilla rule' applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7.    The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8.    The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'

9.    The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10.    The trial court has more discretion than in the 'old era' in evaluating the respondent's evidence. The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.

Street, 886 F.2d at 1479-80.

The Court has distilled from these collective holdings four issues that are to be addressed

7

upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

Particularly close scrutiny is required to be given to motions for summary judgment in civil rights cases. Azar v. Conley, 456 F.2d 1382, 1384 n.1 (6th Cir. 1972); see Tarlton v. Meharry Medical College, 717 F.2d 1523, 1535 (6th Cir. 1984). However, this principle does not preclude an award of summary judgment as the Sixth Circuit Court of Appeals has held that summary judgment can be awarded in an appropriate Title VII case. Shah v. General Electric Co., 816 F.2d 264, 271 (6th Cir. 1987).

## A. Title VII Sexual Harassment Claim

Title VII provides that it is unlawful for an employer to discriminate against any individual on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a). In a disparate treatment case of sex discrimination, a plaintiff is "required to demonstrate that the adverse employment decision would not have been made 'but for' his/her sex." Simon v. City of Youngstown, 73 F.3d 68, 70 (6th Cir. 1995). A plaintiff may prove discrimination in two ways. He/she may either present direct evidence, or indirect evidence of discrimination.

In the absence of direct evidence of discrimination,[2] cases are subject to the McDonnell Douglas three-part, burden-shifting analysis: (1) the plaintiff must establish a prima facie case of discrimination; (2) the employer must articulate some legitimate, nondiscriminatory reason for

---

[2] It should be noted that the McDonnell Douglas formulation for establishing a prima facie case of discrimination is inapplicable to direct evidence cases. As one court stated, "[d]irect evidence and the McDonnell Douglas formulation are simply different evidentiary paths by which to resolve the ultimate issue of defendant's discriminatory intent." Blalock v. Metal Trades, Inc., 775 F.2d 703, 707 (6th Cir. 1985).

8

its actions; and (3) the plaintiff must prove that the stated reason was pretextual. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Accord Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981); Kent County Sherriff's Ass'n v. Kent County, 826 F.2d 1485, 1492 (6th Cir. 1987) (citing McDonnell Douglas & Burdine). The burden of persuasion remains with the plaintiff at all times. Canitia v. Yellow Freight Sys., Inc., 903 F.2d 1064, 1066 (6th Cir. 1990).

To establish a prima facie case of sexual harassment or a sexually hostile work environment under Title VII, the plaintiff must prove that: (1) he/she is a member of a protected class; (2) he/she was subjected to unwelcome sexual harassment; (3) the harassment was based on his/her sex; (4) the harassment created a hostile work environment; and (5) the defendant(s) failed to take reasonable care to prevent and correct any sexually harassing behavior. Bowman v. Shawnee State Univ., 220 F.3d 456, 462-63 (6th Cir. 2000) (affirming summary judgment despite proof of "a litany of perceived slights and abusive" including sexually offensive language). To be actionable, sexual harassment must be sufficiently severe or pervasive to alter the conditions of the plaintiff's employment. Id. The Court is also required to consider if the plaintiff engaged in similar conduct. Id.

Once these elements are proven, "[t]he burden... shift[s] to the defendant articulate some legitimate, nondiscriminatory reasons for the plaintiff's rejection." McDonnell Douglas, 411 U.S. at 802. "The defendant must clearly set forth, through introduction of admissible evidence, reasons for its actions...." Texas Dep't of Comm. Affairs v. Burdine, 450 U.S. 248, 255 (1981). The defendant "need not persuade the [trier of fact] that it was actually motivated by the proffered reasons," 450 U.S. at 254, but "only produce admissible evidence which would allow the trier of fact to rationally conclude that the employment decision was not motivated by discriminatory animus." Id. at 257. The defendant's burden is, thus, one of production; not

9

persuasion. Id. at 254-55. Although the burden of production shifts to the defendant, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against [him] remains at all times with the plaintiff." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993).

Under Title VII, a "workplace [that] is permeated with 'discriminatory intimidation, ridicule, and insult,' and that is 'sufficiently severe or pervasive to alter the conditions of the victims employment and create an abusive working environment'" violates the Act. Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1983) (quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57 (1986)). For a hostile environment claim under Title VII, the plaintiff must establish more than a "mere utterance of an...epithet which engenders offensive feelings in an employee," to be actionable. Harris, 510 U.S. at 21. As the Supreme Court further explained that

> [T]he frequency of the discrimination conduct; its severity; whether it is physically threatening or humbling; or a mere offensive utterance; and whether it unreasonably interferes with an employee's performance. The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive. But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required.

Id. at 23.

The harassing acts must be "either in concert or with a regularity that can reasonably be termed pervasive." Lopez v. S.B. Thomas, Inc., 831 F.2d 1184, 1189 (2nd Cir. 1987). Plaintiff must show that a reasonable person would consider the offensive conduct pervasive and plaintiff must subjectively experience the offensive conduct. Harris, 510 U.S. at 21-22. Yet, the Sixth Circuit explained that sex-based comments need not be directed at a plaintiff in order to constitute conduct violating Title VII. Tennessee courts apply these same principles to THRA claims. Campbell v. Florida Steel Corp., 919 S.W.2d 26, 31 (Tenn. 1996).

Plaintiff cites, as specific acts of harassment, approximately fifteen (15) emails he received from his supervisor, Tammy Huff. (Plaintiff's Deposition p. 49, 57, 79-82; Docket Entry No. 31, at 2-4). Approximately half of those emails were written jokes of a sexual nature, and the other half were jokes of a sexual nature accompanied by a picture or illustration. (Plaintiff's Deposition, Ex. 5). Plaintiff also cites Ms. Huff showing Plaintiff her tattoo, which was located on a suggestive part of her body. (Plaintiff's Deposition, p. 81-82, 92; Docket Entry No. 31 at 2-4). Finally, Plaintiff complains of an incident in which Ms. Huff displayed her undergarments to the Plaintiff and another male co-worker. (Plaintiff's Deposition, p. 79; Docket Entry No. 31 at 2-4).

Plaintiff insists that because he was a male co-worker, and no females were subjected to the same acts, an inference must be drawn that he was targeted for these sexual acts because of his male status. (Docket Entry No. 31 at 4). These incidents occurred on March 31, 2003 through and May 2, 2003, thirty-three (33) days out of Plaintiff's one and one-half year employment at Defendant Company. (Plaintiff's Deposition, Ex 5; Docket Entry No. 1 at 2-3). Plaintiff was employed with Defendant Company from June 24, 2002 through January 14, 2004, remaining employed with Defendant Company more than eight months after the last sexually explicit joke was sent via email from Ms. Huff. (Docket Entry No. 1 at 2-3).

"Title VII does not prohibit all verbal or physical harassment in workplace, but is directed only at discrimination 'because of' sex." Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 80 (1998). "[W]orkplace harassment...is not automatically discrimination 'because of sex' merely because the words used have sexual content or connotations...[rather,] [t]he critical issue...is whether members of one sex are exposed to disadvantageous terms or

11

conditions of employment to which members of other sex are not exposed." Id.

Title VII recognizes sexual discrimination of an individual in a protected group from another member of that group. Id. at 78 ("Because of the many facets of human motivation, it would be unwise to presume as a matter of law that human beings of one definable group will not discriminate against other members of their group." quoting Castaneda v. Partida, 430 U.S. 482, 499 (1977)). The Supreme Court specifically held: [N]othing in Title VII necessarily bars a claim of discrimination "because of...sex" merely because the Plaintiff and the defendant (or the person charged with acting on behalf of the defendant) are of the same sex. Id. at 79. To support a same-sex sexual harassment claim, a plaintiff "must always prove that conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted 'discrimination because of sex.'" Id. at 81.

To prove sexual harassment, Plaintiff must prove that the alleged harassment caused "disadvantageous terms or conditions of [his] employment to which [female employees were] not exposed." Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 80 (1998), see also Harris v. Forklift Systems, Inc., 510 U.S. 17, 25 (1993). While there is not any proof that Huff displayed these behaviors toward female employees, Plaintiff has admitted that Plaintiff suffered no physical injuries as a result of Huff's conduct or the termination of Plaintiff's employment at Defendant Company. (Docket Entry No. 29 at 5). Plaintiff has further admitted that none of Huff's actions toward Plaintiff caused him to make any mistakes at work. (Id.). There is no evidence to support the contention that Plaintiff's "workplace [was] permeated with 'discriminatory intimidation, ridicule, and insult,'... that is 'sufficiently severe or pervasive to alter the conditions of the victims employment and create an abusive working environment'" in

12

violation of the Act. Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1983) (quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57 (1986)).

The Court concludes that the incidents Plaintiff was subjected to do not establish a prima facie case nor establish the severe and pervasive conduct necessary to prove sexual harassment. The Court concludes that Defendant's motion for summary judgment on Plaintiff's sexual harassment claim should be granted.

## B. Retaliation Claim

For his retaliation claim, under §704(a) of Title VII, Plaintiff must show that: (1) he engaged in a protected activity; (2) this exercise of protected rights was known to Defendant(s); (3) Defendant(s) thereafter took adverse employment action and (4) there was a causal connection between the protected activity and the adverse employment action." Simoudis v. Ford Motor Co., No. 00-4226, 29 Fed. Appx. 314 (6th Cir. Feb. 5, 2002; Hafford v. Seidner, 187 F.3d 506, 515 (6th Cir. 1999). The Sixth Circuit has held that this causal connection may be demonstrated by the proximity of the adverse action to the protected activity. Wrenn v. Gould, 808 F.2d 493, 501 (6th Cir. 1987) (citing Burrus v. United Telephone Co., 683 F.2d 339, 343 (10th Cir. 1982). See also Croushorn v. Bd. of Trustees of the University of Tennessee, 518 F. Supp. 9, 19 (M.D. Tenn. 1980).

Plaintiff carries the ultimate burden of proving retaliation. If a prima facie case is established, then the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action. Jackson v. Pepsi Cola, Dr. Pepper Bottling Co., 783 F.2d 50, 54 (6th Cir. 1986) (citing Burrus v. United Telephone Co., 683 F.2d 339, 343 (10th Cir. 1982), cert. den., 459 U.S. 1071 (1982)). The plaintiff may rebut defendant's legitimate action by

13

demonstrating the articulated reason was a mere pretext for retaliatory discrimination. <u>Id.</u>

Title VII defines two types of protected activity: (1) when an employee makes a charge, files a complaint, or participates in an investigation of discrimination, otherwise known as the participation clause, and (2) when an employee opposes the violation of discrimination laws, otherwise known as the opposition clause. <u>Booker v. Brown & Williamson Tobacco Co., Inc.,</u> 879 F.2d 1304, 1312 (6th Cir. 1989). A showing of "participation" in Title VII activities grants a plaintiff "stronger protection than the 'opposition' clause provides," because the former encourages the personal vindication of rights under Title VII. <u>Croushorn</u> 518 F. Supp. at 21. The allegations in the Title VII charges do not have to be true to be protected. <u>Id.</u> at 22.

Yet, a Title VII "plaintiff is not shielded from legitimate discipline because he [or she] filed a charge of discrimination." <u>Jackson v. RKO Bottlers of Toledo Inc.,</u> 743 F.2d 370, 377 (6th Cir. 1984) <u>cert.</u> <u>denied</u> 478 U.S. 1006 (1986) (citing <u>Brown v. Ralston Purina Co.,</u> 557 F.2d 570, 572 (6th Cir. 1977)). To be sure, "an employer may not use what theoretically may be a legitimate cause for discipline as a pretext for what is in reality retaliation against an employee for engaging in activity protected under Title VII." <u>Id.</u> at 378.

Plaintiff contends that he engaged in protected activity by sending three emails, on January 13, 2004 (some eight months after the last sexually explicit email), to Mr. Uemura, one of Defendant's corporate officials in Japan. In the first email, Plaintiff stated "Sir, having big problems at AAI. Please contact for further information. Will Hamby." The second email had the subject line "sexual harassment" and stated "Please, sir, I would like to be contacted fast about this and other situations." The third email also had the subject line "sexual harassment" and stated:

14

"Sir, sorry to bother you, but there are many things going on at AAI.
I have much proof of this. Some people are trying to get me fired.
All or some are supervisors. I cannot trust Nobu Uemura or Koji
about this matter until you can talk to me. Many other things are going
on also. Will Hamby."

(Docket Entry No. 31 at 8; Plaintiff's Deposition at 126-28).

This Circuit has long held, "a vague charge of discrimination in an internal letter or memorandum is insufficient to constitute opposition to an unlawful employment practice. An employee may not invoke the protections of the Act by making a vague charge of discrimination." Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1313 (6th Cir. 1989). Plaintiff's email does not allege that he has been discriminated against. The only allegation made against the Defendant in the email is that sexual harassment of some sort is going on somewhere in the company involving unidentified individuals. The only allegation made in which the Plaintiff identifies himself is a vague accusation, "some people are trying to get me fired." (Plaintiff's Deposition at 126-28). Plaintiff's emails do not constitute "protected activity," and therefore, Plaintiff's retaliation claim fails.

In sum, the Court concludes Plaintiff has not carried his burden to present sufficient evidence to support a judgement on his retaliation claim.

For the above reasons, the Defendants' motion for summary judgment should be granted.

Defendant's motion for judgment on the record (Docket Entry No. 23) and Defendant's motion to continue trial and schedule mediation (Docket Entry No. 36) are denied as moot.

An appropriate Order is filed herewith.

Entered this the 17th day of October, 2005.

WILLIAM J. HAYNES, JR.
United States District Judge

15